THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JENNIE RUSSELL, Plaintiff in Error.

*Opinion filed April 21, 1910—Rehearing denied June 10, 1910.*

1. CRIMINAL LAW—*offenses which may be prosecuted by information.* The only offenses which may be prosecuted by information are those where the punishment is by fine, alone, by imprisonment otherwise than in the penitentiary, alone, or either by fine or such imprisonment or by both fine and imprisonment, but cases in which the punishment is by fine and imprisonment and some other additional penalty can be prosecuted only by indictment.

2. SAME—*deprivation of civil rights as a penalty for committing offense is part of the punishment.* The deprivation of civil rights which follows conviction for the offenses specified in section 7 of division 2 of the Criminal Code, which include larceny, is part of the punishment for the offense and not a mere incident of the punishment. (*Ex parte Bollig,* 31 Ill. 88, distinguished.)

3. SAME—*whether crime is infamous depends upon the statute.* Whether a crime is infamous in Illinois depends not upon the common law but upon the statute, as the constitution does not define, nor restrict the legislature in defining, infamous crimes.

4. LARCENY—*offense of petit larceny can be prosecuted only by indictment.* Petit larceny is an infamous crime, which subjects the offender to a punishment other than by fine or imprisonment otherwise than in the penitentiary, and can be prosecuted only upon indictment by a grand jury.

5. SAME—*fact that defendant is a woman does not authorize prosecution for petit larceny by information.* The fact that one accused of petit larceny is a woman and that her loss of civil rights under section 7 of division 2 of the Criminal Code, which follows her conviction for the offense, is more restricted than in case the offender were a man, does not authorize the prosecution of the offense by information.

6. SAME—*the fact that petit larceny is not a felony does not authorize prosecution by information.* The fact that petit larceny is only a misdemeanor and not a felony does not authorize the prosecution of the offender by information, since section 7 of division 2 of the Criminal Code, which deprives of his civil rights a person convicted of an offense specified therein, is not based on the distinction between felonies and misdemeanors.

7. SAME—*county court's long assumed jurisdiction in petit larceny cannot be recognized as lawful.* The fact that the county

courts of the State have for many years assumed jurisdiction to try petit larceny cases on information does not require that such assumed jurisdiction, when finally brought in question, shall be recognized as a lawful jurisdiction, in the face of contrary provisions of the law.

8. SAME—*effect of previous convictions for petit larceny on information.* Previous convictions, in Illinois, of the crime of petit larceny when prosecuted by information have not deprived the persons so convicted of their civil rights, for the reason that the judgments rendered were without jurisdiction.

HAND and CARTER, JJ., dissenting.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding.

LOUIS GREENBERG, JOHN F. TYRRELL, and HENRY ECKHART, for plaintiff in error:

Larceny is an infamous offense. Hurd's Stat. 1908, chap. 38, sec. 7, p. 792.; *State* v. *Buckman,* 18 Fla. 268; *Anderson* v. *State,* 72 Ala. 187.

The constitution of this State provides that "no person shall be held to answer for a criminal offense unless on an indictment by a grand jury, except in cases in which the punishment is by fine and imprisonment otherwise than in the penitentiary." Const. 1870, art. 2, sec. 8.

The municipal court of Chicago is not given final jurisdiction of infamous crimes.

Larceny in this State is defined as follows: "Larceny is the felonious stealing, taking and carrying, leading, riding or driving away the personal goods of another." See Hurd's Stat. 1908, chap. 38, sec. 167, p. 746.

The omission of the word "felonious" in an information or indictment for larceny is fatal. *Sovine* v. *State,* 85 Ind. 577; *State* v. *Casteel,* 53 Mo. 124; *Commonwealth* v. *Pratt,* 132 Mass. 246; *Queen* v. *Morrison,* 18 N. B. 682.

The motion to quash the information should have been sustained for failure to allege that defendant did "feloniously" steal, take and carry away, etc.

W. H. STEAD, Attorney General, JUNE C. SMITH, and JOHN E. W. WAYMAN, (CHARLES V. BARRETT, and HIRAM T. GILBERT, of counsel,) for defendant in error:

Is petit larceny an infamous crime? The word "infamous" signifies detestable, odious, scandalous, disgraceful, base or vile. *Palson* v. *Palson,* 140 Ind. 310.

In the absence of a statute defining and making a crime infamous, the test is whether it is such a crime as involves moral turpitude. *State* v. *Bixler,* 62 Md. 354.

At the common law the term "infamous," when used to qualify the word "crime," signified treason, felony and the *crimen falsi. United States* v. *Block,* 24 Fed. Cas. 1174; *Webb* v. *State,* 29 Ohio St. 351; *Wick* v. *Baldwin,* 51 id. 51.

The later and perhaps the better definition is, an offense that subjects a person to infamous punishment, and the character of the offense is usually determined by the punishment. *Baum* v. *State,* 157 Ind. 282; *Gudger* v. *Penland,* 108 N. C. 593; *Parkinson* v. *United States,* 121 U. S. 281.

A thing will not be regarded as within a statute, although within the letter, unless it be within the intention. *People* v. *Harrison,* 191 Ill. 257; *Anderson* v. *Railroad Co.* 117 id. 26; *People* v. *Hoffman,* 97 id. 234; *Perry County* v. *Jefferson County,* 94 id. 214.

It is a well established rule in the construction of statutes that where absurd consequences are to result from a particular construction, that construction should be avoided unless the meaning of the legislature be plain and manifest. *People* v. *Wren,* 4 Scam. 269.

When the literal enforcement of a statute would result in great inconvenience and cause great injustice and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction that will promote the ends of justice

and avoid the absurdity. *Bryan* v. *Buckmaster,* Breese, 408; *People* v. *Marshall,* 1 Gilm. 672.

The intention of the legislature is to be gathered from the necessity or reason of the enactment, and the meaning of the words used be enlarged or restricted according to the true intent. *Castner* v. *Walrod,* 83 Ill. 171; *Cruse* v. *Aden,* 127 id. 231.

Where the meaning of a constitutional or statutory provision is doubtful, the uniform, long continued and contemporaneous construction by public officials will have great weight with the courts in deciding the proper construction. *Nye* v. *Foreman,* 215 Ill. 285; *Cook County* v. *Healy,* 222 id. 310; *People* v. *Glowacki,* 236 id. 612.

The municipal court of Chicago has jurisdiction of all criminal cases in which the punishment is by fine or imprisonment otherwise than in the penitentiary, and all other criminal cases which the laws in force from time to time may permit to be prosecuted otherwise than on indictment by a grand jury. Hurd's Stat. 1908, sec. 2, p. 665; *People* v. *Glowacki,* 236 Ill. 612.

All offenses cognizable in county courts may be prosecuted by information of State's attorney, Attorney General or some other person. Hurd's Stat. 1908, par. 207, p. 653.

The county courts have jurisdiction of all criminal offenses and misdemeanors where the punishment is not imprisonment in the penitentiary or death. Hurd's Stat. 1908, par. 95, p. 648.

Section 8 of article 2 of the constitution makes a clear distinction between felonies and misdemeanors, so far as indictments by grand juries are concerned. *Brewster* v. *People,* 183 Ill. 143.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error was convicted in the municipal court of Chicago on an information which charged her with petit larceny, and was sentenced to four months' imprison-

ment in the House of Correction and to pay a fine of one dollar. She seeks to reverse the judgment and insists that petit larceny can be prosecuted only by indictment, and the municipal court was therefore without jurisdiction to try her.

Section 8 of article 2 of the constitution of this State provides that "no person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary," etc. Section 7 of division 2 of chapter 38 of the Revised Statutes provides that "every person convicted of the crime of murder, rape, kidnapping, willful and corrupt perjury or subornation of perjury, arson, burglary, robbery, sodomy or other crime against nature, incest, larceny, forgery, counterfeiting or bigamy, shall be deemed infamous, and shall forever thereafter be rendered incapable of holding any office of honor, trust or profit, or voting at any election, or serving as a juror, unless he is again restored to such rights by the terms of a pardon for the offense, or otherwise, according to the law: *Provided, however*, that the foregoing shall not apply to any person who has been heretofore convicted and sentenced, or who may be hereafter convicted and sentenced to the Illinois State Reformatory at Pontiac."

It thus appears that the smallest part of the punishment provided for petit larceny is the fine and imprisonment imposed by the judgment of the court. There follows from the judgment a loss of civil rights, which practically deprives the convict of his citizenship unless restored thereto by a pardon. There remain to him after the judgment of the court is satisfied only his mere personal rights, by virtue of which his life, his liberty and his property are protected from deprivation. He has become an alien in his own country, and worse, for he can be restored only as a matter of grace while an alien may acquire citizenship as a matter of right. The plaintiff in error is a woman and

the rights she has lost are more restricted than those of a man, but they are all she had, and a man could lose no more.

The constitutional provision mentioned was under consideration in the case of *People* v. *Glowacki*, 236 Ill. 612, and it was held there that all violations of law could be prosecuted by information where the punishment was by fine alone, by imprisonment otherwise than in the penitentiary alone, or by either fine or such imprisonment or by both fine and such imprisonment. This enumeration includes all the cases in which prosecutions may be carried on by information. Cases in which the punishment consists of fine and imprisonment and some additional penalty can be prosecuted only by indictment. (*People* v. *Kipley*, 171 Ill. 44.) The disqualification created by the section of the Criminal Code heretofore cited is not a mere incident of the punishment, as in the case of *Ex parte Bollig*, 31 Ill. 88, where the power of a justice of the peace to commit a defendant to prison until his fine was paid was sustained as an incidental means of collection and not a part of the punishment, and in the case of *State* v. *Harris*, 50 Minn. 128, where the revocation of a license to sell intoxicating liquors, upon a conviction of a violation of a city ordinance in regard to their sale, was held not to be a part of the punishment, because it was a mere privilege to pursue a business peculiarly subject to police regulation and might legally be revoked without judicial proceedings of any character. The labor that may be required of the person convicted in the workhouse or on the streets may be regarded as incidental to the imprisonment and necessary to the proper employment of the prisoners and discipline of the prison. Here, however, there is a deprivation of substantial civil rights as a penalty declared by law upon a conviction for crime, and it cannot be considered in any other light than as punishment for the crime. The deprivation of any civil right for past conduct is punishment for such conduct. *Cummings* v. *Missouri*, 4 Wall. 277.

It is conceded in the argument of the prosecution,— and such concession accords with our view of the law,— that if petit larceny is an infamous crime under section 7 of division 2 of the Criminal Code, the disqualifications imposed by that section constitute punishment additional to fine and imprisonment, and that the offense cannot be prosecuted by information. It is insisted, however, that while petit larceny by a literal construction of the statute must be held to be an infamous crime, yet, construed in view of other statutes and with reference to the intention of the legislature, it should be excluded from that class. In a general way it may be said that the line drawn by the constitution between cases in which prosecutions must be by indictment and cases in which prosecutions may be by information is the line between felonies and misdemeanors, and expressions supporting that proposition may be found in the decisions of this court, one of which is the case of *Brewster* v. *People,* 183 Ill. 143. When the constitution of 1870 was adopted there was no definition of felony in this State different from that of the common law, which is, "an offense which occasions a total forfeiture of either lands or goods, or both, at the common law, and to which capital or other punishment may be superadded, according to the degree of guilt." (4. Blackstone's Com. 95.) The statutory classification which defines a felony as an offense punishable with death or by imprisonment in the penitentiary and every other offense as a misdemeanor was contained first in the Revised Statutes of 1874. Petit larceny at common law was the stealing of goods of the value of twelve pence or under, (4 Blackstone's Com. 229,) and it was a felony. (Ibid. 95, 97.)

Under the statute passed in 1827 there was no distinction between grand larceny and petit larceny. The law recognized but one offense, and the punishment was a fine of not less than half of the value of the thing stolen, whipping not to exceed one hundred lashes and imprisonment

not exceeding two years.  (Laws of 1827, p. 134.)  In 1833 larceny was made punishable by imprisonment in the penitentiary for a term of years from one to ten, and it was provided that if the value of the property stolen did not exceed five dollars, the punishment should be a fine not to exceed $100 and imprisonment in the county jail not exceeding three months.  (Laws of 1833, pp. 182, 183.) On March 5, 1867, the value of the stolen property requiring confinement in the penitentiary was raised to $25, (Laws of 1867, p. 90,) but at the special session in 1867 was reduced to $15.  (2 Laws of 1867, p. 37.)  During all this time no change was made in the status of larceny as a felony, and, without regard to the value of the property stolen, it was an infamous crime, subjecting one convicted of the offense to the deprivation of his civil rights. The section declaring what crimes shall be deemed infamous has been a part of the Criminal Code in substantially its present form since 1827, except that incest was not included until 1845 nor murder until 1874, and except that prior to 1874 it did not provide for a pardon and did not contain the proviso in regard to the State reformatory.  Under this section it was declared, in 1860, that petit larceny was an infamous crime, and the pardon of the Governor did not restore one convicted thereof, to his rights lost by reason of such conviction.  *Foreman* v. *Baldwin,* 24 Ill. 299.

Whether or not a crime is infamous in this State depends not upon the common law but upon the statute.  The constitution does not define, or restrict the legislature in defining, infamous crimes, and the power has always been exercised and recognized.  After the amendment of the law in regard to larceny, in 1867, that crime could still be prosecuted only by indictment, whether the value of the property stolen was greater or less than $15, because the constitution of 1848 (art. 13, sec. 10,) prohibited prosecutions for criminal offenses, unless on the indictment of a grand jury, except in cases of impeachment, or cases cog-

nizable by justices of the peace, or arising in the army or navy, or in the militia when in actual service, and provided that justices of the peace should try no person, except as a court of inquiry, for any offense punishable with imprisonment or death or fine above $1000. The constitution of 1870 did not, of itself, make any change in the law concerning larceny, the manner of its prosecution or its status as an infamous crime. No authority existed for prosecuting it, or any other crime the punishment of which involved imprisonment otherwise than by indictment, until the legislature should enact a law for that purpose. On April 5, 1872, a law was enacted, which went into force on July 1, 1872, which attempted to confer upon the county court exclusive jurisdiction in all criminal cases and misdemeanors where the punishment was not imprisonment in the penitentiary or death. (Laws of 1872, p. 325.) This act was repealed by the revision of 1874, and by section 7 of the County Court act in that revision the county court was given concurrent jurisdiction with the circuit court in all criminal offenses and misdemeanors where the punishment is not imprisonment in the penitentiary or death. Before this change in the law long after the adoption of the constitution of 1870, larceny of any amount was, as it always had been, an infamous crime and could be prosecuted only by indictment.

It is argued that by the act which attempts to confer jurisdiction upon the county court of all criminal offenses and misdemeanors where the punishment is not imprisonment in the penitentiary or death the county court acquired jurisdiction of petit larceny, even though it was then, as always, an infamous crime, subject to a punishment in addition to fine and imprisonment otherwise than in the penitentiary. The argument is that, the legislature having no power to confer on the county court jurisdiction of an infamous crime, if it attempted to confer jurisdiction of a particular crime which was infamous, it thereby impliedly

repealed so much of the statute as declared the crime infamous. Any implied intention is, however, rebutted by the fact that the Criminal Code, which is a part of the same revision as the County Court act and went into force the same day, expressly continues in force the section declaring larceny infamous. The legislature possibly assumed that the expression, "all criminal offenses and misdemeanors when the punishment is not imprisonment in the penitentiary or death," was equivalent to the constitutional language, "cases in which the punishment is by fine or imprisonment otherwise than in the penitentiary." These expressions, however, are not equivalent, for there is a class of cases where the punishment is neither "imprisonment in the penitentiary or death" nor "by fine or imprisonment otherwise than in the penitentiary," but is by fine or imprisonment otherwise than in the penitentiary and something more, viz., the deprivation of civil rights. Petit larceny was not the only crime so punishable at the time the County Court act was passed, but in the same class were, and had been for many years, the offense of any attorney or other officer authorized to collect money who failed to pay it over on demand; (Laws of 1861, sec. 1, p. 178; Crim. Code, sec. 79;) bribery in elections; (Rev. Stat. 1845, sec. 143, p. 177; Hurd's Stat. 1909, chap. 46, sec. 83;) malfeasance in office; (Rev. Stat. 1845, sec. 110, p. 170; Crim. Code, sec. 208). In the same class are the habitual intoxication of officers; (Crim. Code, sec. 209;) soliciting or receiving a bribe to influence a vote at a primary election; (2 Laws of 1909, sec. 67, p. 74;) the refusal of a sheriff or other officer to arrest a person charged with or convicted of crime. (Crim. Code, sec. 83.) So long as these offenses, as well as larceny, subject the offender to the disabilities which constitute a part of their punishment they cannot be prosecuted otherwise than by indictment, and the County Court act cannot be regarded as impliedly repealing all these disabilities. The fact that it does not af-

fect the punishment annexed to any crime, and was not intended to do so, is demonstrated by the fact that it takes the existing punishments established by law as the basis for conferring jurisdiction.

The section of the Criminal Code under consideration is not based on the distinction between felonies and misdemeanors. While all the offenses included in it, except petit larceny, are felonies, there are many felonies which are not included, among them abduction, abortion, various forms of bribery and fraud, and manslaughter. We can no more take the misdemeanor, petit larceny, out of the list than we can put another felony in. We do not overlook the fact that many prosecutions of the crime of petit larceny have been carried on by information in the various county courts of the State. The jurisdiction so assumed and exercised without question for many years cannot, when finally brought in question, be recognized as a lawful jurisdiction in the face of the plain terms of the law. The offense of petit larceny subjects the offender to punishment other than fine or imprisonment otherwise than in the penitentiary, and can be prosecuted only upon an indictment by a grand jury. While many convictions have no doubt been had in cases prosecuted by information, the persons so convicted have not incurred any loss of civil rights because the judgments so rendered have been without jurisdiction.

The judgment is reversed.    *Judgment reversed.*

HAND and CARTER, JJ., dissenting:

The question presented in this case for decision is, can the crime of petit larceny be prosecuted in this State by information or must it be prosecuted by indictment? The constitution of 1870 provides that all criminal offenses must be prosecuted by indictment, "except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary,"—that is, that all crimes punishable by fine

or imprisonment in the county jail may be prosecuted by information.    (Art. 2, sec. 8.)    Section 95 of the County Court act provides that the county courts of this State shall have jurisdiction "in all criminal offenses and misdemeanors where the punishment is not imprisonment in the penitentiary or death;" and section 207, that "all offenses cognizable in county courts shall be prosecuted by information;" and section 210, that "when the grand jury of the circuit court shall indict for offenses cognizable in the county court, such indictments may be certified to the county court for process and trial;" and section 277 of the Criminal Code defines felony as "an offense punishable with death or by imprisonment in the penitentiary;" and section 278 declares "every other offense [than a felony] is a misdemeanor."

Since the year 1870 (the date of the adoption of our present constitution) it has been the practice in this State to prosecute the crime of petit larceny in the county courts upon indictments certified from the circuit courts or by information filed in the county courts by the State's attorney. In other words, for forty years the county courts in this State have assumed jurisdiction of the offense of petit larceny upon indictments so certified, or by informations filed in these courts.    The jurisdiction of the municipal court of Chicago over the crime of petit larceny rests upon the same basis as that of the county courts.    The majority opinion holds, however, that the crime of petit larceny cannot be prosecuted otherwise than upon an indictment by a grand jury, the effect of which is to deprive county courts and the municipal court of Chicago of the jurisdiction to try the crime of petit larceny, and to require every petit larceny to be tried upon indictment in the circuit court outside of Cook county and in the criminal court of Cook county.    In order to reach this conclusion the majority opinion ignores the provision of section 8 of article 2 of the constitution which provides that all offenses punishable by fine or impris-

onment otherwise than in a penitentiary may be prosecuted by information, and brushes aside, without consideration, that distinction between felonies and misdemeanors contained in the several sections of the statutes heretofore referred to. The decision rests, as the majority opinion states, upon a statute passed in the year 1827, at a time when there was no such crime in this State as petit larceny. This we think too narrow a view of the subject. While it may be conceded that the word "larceny," found in section 279 of the Criminal Code, which section enumerates the crimes which are infamous in this State, is broad enough to include petit larceny, and while all larcenies may have been included within the terms of that section of the statute at one time, still it is a well settled doctrine that statutes are repealed, modified or limited in their operation by subsequent statutes, although the statute repealed, modified or limited is not mentioned in the later statute. Such changes are said to be accomplished by implication. The question, therefore, is limited to this: does a fair construction of said section 279, when considered in connection with the constitutional provision found in section 8 of article 2, which points out the crimes which must be prosecuted by indictment and those which may be prosecuted by information, and the numerous statutes which have been passed since the adoption of that constitutional enactment to carry it into effect, require this court to hold that petit larceny is an infamous crime in this State at the present time?—that the infamy which follows a conviction of the offense of petit larceny raises that crime to the grade of crime which must be prosecuted by indictment and cannot be prosecuted by information? We think not.

One of the consequences of the holding of the majority opinion is to deprive the county courts of the State and the municipal court of Chicago of jurisdiction over the offense of petit larceny,—an offense punishable by fine, or by imprisonment in the county jail, work house, etc.,—while

those courts have jurisdiction of all other offenses similarly punishable. To require petit larceny to be prosecuted by indictment while all other crimes of the same grade may be prosecuted by information places the defendant who steals one dollar, as was the charge in this case, in the same position, with reference to infamy, before the law as the man who commits murder, rape or burglary,—that is, to render him infamous for all time unless he is restored (if he can be restored) to his rights of citizenship. Under section 279 of the Criminal Code, in all the crimes designated as infamous in that section which are made punishable by imprisonment in the State reformatory at Pontiac, the conviction does not render the defendant infamous. If, therefore, a boy should steal $100 and should be convicted therefor and be sentenced to the reformatory he would not thereby be rendered infamous; if, however, he steals a crust of bread to satisfy his hunger and is convicted and sentenced one day to the county jail or house of correction and fined one cent he would be rendered infamous.

One object of the provision of section 8 of article 2 of the constitution, and legislation based thereon, was to provide a means whereby petty offenders could have a speedy trial. The municipal court is in session continuously and county courts have frequent sessions. Under the law as heretofore administered, persons charged with petit larceny could be speedily tried in those courts. If such persons must be hereafter prosecuted by indictment and tried in the circuit court or criminal court of Cook county, in many instances they will remain in jail for months before they can have a hearing, which situation to all offenders, especially to young offenders, is most deplorable.

The statute in this State provides (chap. 131, sec. 1, par. 1,) that "all general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out." If we approach the question under consideration with

a view to ascertain the true legislative intent as expressed in all the statutes passed by the legislature on the subject, we think the conclusion must necessarily be reached that it was the legislative will that the crime of petit larceny should not be considered an infamous crime, but that it falls within that class of cases which may be prosecuted by information. While the offense of petit larceny may fall within the letter of said section 279, we do not think it falls within its spirit. We think it obvious that the consequences of holding the crime of petit larceny to be an infamous one, which must be prosecuted by indictment, leads to such results that it is clear the legislature could not have intended, by the enactments which it has passed since the adoption of the constitution of 1870, that the crime of petit larceny is an infamous offense, which must be prosecuted by indictment.

In *People* v. *Harrsion,* 191 Ill. 257, on page 266, this court said: "It is said in *People* v. *Wren,* 4 Scam. 269, (at p. 277): 'It is a well established rule in the construction of statutes, that where great inconvenience or absurd consequences are to result from a particular construction, that construction should be avoided unless the meaning of the legislature be plain and manifest.' In *People* v. *City of Chicago,* 152 Ill. 546, the rule is stated as follows: 'It may be well to here call attention to some of the rules which should influence the court in interpreting the statute now in question. The General Assembly, in the act revising the law in relation to the construction of the statutes, lays down as the first rule to be observed, the following: 'All general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried out.' (2 Starr & Cur. chap. 131, sec. 1.) A thing within the intention is regarded as within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. (*Perry County* v. *Jefferson*

*County,* 94 Ill. 214; *People* v. *Hoffman,* 97 id. 234; *An-
derson* v. *Chicago, Burlington and Quincy Railroad Co.* 117
id. 26.) The several provisions of the statute should be
construed together in the light of the general objects and
purposes of the enactment, and so as to give effect to
the main intent, although particular provisions are thus
construed not according to their literal reading. (*Hill* v.
*Harding,* 93 Ill. 77; *Wabash, St. Louis and Pacific Rail-
way Co.* v. *Binkert,* 106 id. 298.) The intention is to be
gathered from the necessity or reason of the enactment, and
the meaning of words enlarged or restricted according to
the true intent. (*Castner* v. *Walrod,* 83 Ill. 171; *Cruse*
v. *Aden,* 127 id. 231.) That which is implied is as much
a part of the statute as that which is expressed. (Potter's
Dwarris, 145; *United States* v. *Babbit,* 1 Black, 55.)
When the literal enforcement of a statute would result in
great inconvenience and cause great injustice, and lead to
consequences which are absurd and which the legislature
could not have contemplated, the courts are bound to pre-
sume that such consequences were not intended, and adopt
a construction which will promote the ends of justice and
avoid the absurdity.—*Bryan* v. *Buckmaster,* Breese, 408;
*People* v. *Marshall,* 1 Gilm. 672.' In *People* v. *Kipley,* 171
Ill. 44, (at p. 77,) the court says: 'In determining the
meaning of a statute the court will have regard to existing
circumstances or contemporaneous conditions, and also to
the objects sought to be obtained by the statute and the
necessity or want of necessity for its adoption.' The late
expression of the Supreme Court in *Hogan* v. *Akin,* 181
Ill. 448, by Chief Justice Cartwright, is: 'It is true, we
cannot disregard a provision of that kind appearing to be
within the intention of the law-makers, but the purpose of
construction is to find and give effect to such intention.
* * * In seeking for such intention we are to consider
not only the language used by the legislature, but also the
evil to be remedied and the object to be obtained.' "

Our conclusion is that petit larceny is not an infamous crime in this State.

The opinion of the majority is wrong, we think, for the further reason that the true line of demarcation between crimes which must be prosecuted by indictment and those which may be prosecuted by information has been misstated therein. It has been established by this court in a long line of decisions that all crimes which are punishable by imprisonment in the penitentiary,—that is, felonies,— must be prosecuted by indictment, while all other offenses which are punishable by fine and imprisonment,—that is, misdemeanors,—may be prosecuted by information. Such has been the settled doctrine of this court since the adoption of the constitution of 1870. (See *Brewster* v. *People,* 183 Ill. 143; *Paulsen* v. *People,* 195 id. 507; *People* v. *Glowacki,* 236 id. 612, and cases referred to therein.) The principles announced in those decisions on the subject in hand are not only well settled but are clearly enunciated, and the line between crimes punishable by imprisonment in the penitentiary and those punishable by fine, and imprisonment otherwise than in the penitentiary,—that is, between felonies and misdemeanors,—is specifically indicated therein, and it is held that those crimes which are punishable by imprisonment in the penitentiary must be prosecuted by indictment, while all other crimes which are punishable by fine, and imprisonment otherwise than in the penitentiary, may be prosecuted by information. This being true, we do not think this court ought to unsettle that doctrine by holding that there is a class of crimes punishable by fine, and imprisonment otherwise than in the penitentiary, which must be prosecuted by indictment and cannot be prosecuted by information. Further, if said section as to infamous crimes was intended to include petit larceny, the section to that extent should be held unconstitutional under the provision of the bill of rights which provides, "all penalties shall be proportioned to the nature of the offense." The

majority opinion holds that the smallest part of the punishment provided for petit larceny is the fine and imprisonment; that the infamy which follows the conviction for such offense is the far greater part of the punishment. The holding that petit larceny is an infamous crime surely brings this result. Is it not evident that the legislature never had any such intention?

The proceedings in the constitutional convention of 1870 strongly support the contention that under section 8 of article 2 of the bill of rights it was intended that petit larceny could be prosecuted by information. If there be any doubt as to the meaning of the constitutional provision, the proceedings of the constitutional convention may be resorted to in order to ascertain the object that the convention had in mind in adopting any given provision. "When the inquiry is directed to ascertaining the mischief designed to be remedied or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory." Cooley's Const. Lim. (7th ed.) 101; *Starne v. People,* 222 Ill. 189; *Halsey & Co.* v. *City of Bell Plaine,* 127 Iowa, 467; *Epping* v. *City of Columbus,* 117 Ga. 263; Potter's Dwarris on Statutes and Constitutions, p. 657.

The proceedings of the convention of 1870 show that there was a lengthy discussion as to whether the grand jury system should be absolutely abolished. In the midst of the discussion on this question the committee on the bill of rights made its report. That report included, among its other provisions, section 9, which read: "No person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases of petit larceny and offenses less than felony, in which the punishment is by fine, and imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the

army and navy, or in the militia when in actual service in
time of war or public danger." (2 Const. Debates of 1870,
p. 1440.) At that time there was no discussion as to the
provision in the bill of rights. Later, the various sections
of the bill of rights were considered by the convention,
when again there was a sharp debate as to abolishing the
grand jury. April 29, 1870, a substitute was adopted by
the convention for said section 9, which provided that no
grand jury should be empaneled in the circuit or county
court but that offenses should be prosecuted by informa-
tion, with the further provision that grand juries might
be re-established after 1874. (2 Const. Debates of 1870,
p. 1769.) A motion to reconsider was passed the same day,
and section 9 as heretofore set out was adopted by the con-
vention after the following amendment had been added to
the close of the section: *"Provided,* that the General As-
sembly may provide for the abolition of the grand jury
in all cases." (2 Const. Debates of 1870, p. 1573.) After
all the sections in the bill of rights had been considered
and adopted by the convention, it was referred April 30 to
the committee on revision and adjustment, no other changes
having been made in said section 9 by the convention be-
fore it was so referred. The province of that committee
was clearly shown by its title, viz.: "to adjust,"—that is,
"to re-arrange; to bring into proper position;" and "to
revise,"—that is, "to re-examine; to carefully read over
for correction and improvement, as revision of statutes."
(Webster's Dict.) That this was the province of this com-
mittee,—that is, to re-arrange and make verbal changes,
and not to change, in substance or meaning, the various
provisions of the constitution referred to it by the conven-
tion,—is clear by its proceedings. The convention took no
further action with reference to the bill of rights until the
chairman of the committee on revision and adjustment
(Mr. Cody) submitted a report, in which he said that the
committee to whom had been referred the bill of rights

having had the same under consideration, "as amended and concurred in by the convention, have revised and adjusted the various sections thereof and have directed me to report the same back in the words following." (2 Const. Debates of 1870, p. 1776.) As then reported to the convention, former section 9 as it existed when referred to said committee was changed to section 8 as it is now found in the constitution.

It will be noted that section 8 reads exactly the same as former section 9, excepting that the words "of petit larceny and offenses less than felonies" were stricken out. No comment was made as to this change at the time the report was adopted. Had these words not been stricken from the section there could be no question that petit larceny could be prosecuted by information. Manifestly, the committee in reporting, and the convention in adopting, section 8 as it now reads, understood that by its wording petit larceny could be prosecuted by information. Section 8 as adopted was intended to have the same meaning as former section 9 but in more concise language. The constitution was presented to the people with an address from the convention that conveyed this idea. Among other things that address stated: "Grand juries may be dispensed with. Our jails are crowded with criminals during the interval of circuit courts, at great expense to the counties. County courts may be authorized to try, in a summary manner, many criminal cases, and thus save the counties the large expenditure of keeping prisoners for trial from term to term of the circuit courts, and persons not guilty may be promptly discharged or acquitted." (2 Const. Debates of 1870, p. 1863.)

From this review of the history of the adoption of said section 8 of the bill of rights, how can there be any doubt that the convention intended that petit larceny could be prosecuted by information? A large percentage of the offenders found in the county jails are charged with petit

larceny. This was a part of the mischief to be remedied by permitting certain offenses to be prosecuted by information. If the construction of the various statutes in connection with this provision of the bill of rights is as contended for by the majority opinion, surely it seems to us in the many cases that have been before the court during all these years that construction would have attracted the attention of counsel or the courts. (*People* v. *Glowacki, supra.*) In our judgment a reasonable construction of these statutes and this provision of the bill of rights in accordance with their plain intent would require the affirmance of the judgment of the lower court.