SECOND DISTRICT—OCTOBER, 1910.        369

Butters v. Chicago, Burlington & Quincy Ry. Co., 157 Ill. App. 369.

Fannie T. Butters, Admx., Defendant in Error, v. Chicago, Burlington & Quincy Railway Company, Plaintiff in Error.

## Gen. No. 5321.

1. APPEALS AND ERRORS—*when ruling upon motion for peremptory instruction waived.* The introduction of evidence ensuing the over-ruling of a motion for peremptory instruction waives the right to question the propriety of such ruling.

2. INSTRUCTIONS—*what essential to justify giving of peremptory.* The giving of a peremptory instruction is not authorized unless there is no evidence or but a scintilla of evidence tending to prove the material allegations of the declaration.

3. INSTRUCTIONS—*use of phrase "at the time he was killed" as applied to exercise of ordinary care.* Held, in view of all of the instructions given in this case, that the use of the phrase "at the time he was killed" as applied to the exercise of ordinary care was not too restrictive.

4. CONTRIBUTORY NEGLIGENCE—*driving upon tracks.* Whether a person is guilty of negligence in approaching and driving upon tracks in front of a train is ordinarily a question of fact to be determined by the jury.

5. CONTRIBUTORY NEGLIGENCE—*driving upon tracks.* Contributory negligence cannot be imputed to a person approaching and driving upon railroad tracks for a failure to anticipate that the defendant's servant would approach the crossing in question at a rate of speed prohibited by ordinance.

6 EVIDENCE—*when conviction of crime competent upon question of credibility.* Conviction of grand larceny being conviction of an infamous offense is competent to be shown as affecting the credibility of a witness, and by statute such witness may be compelled to testify as to whether or not he was convicted of such crime.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910. Rehearing denied November 18, 1910. Opinion filed October 18, 1910. Rehearing denied November 18, 1910. *Certiorari* denied by Supreme Court (making opinion final).

ROBERT C. MORSE and NICHOLAS J. DEMERATH, for plaintiff in error; CHESTER M. DAWES and J. A. CONNELL, of counsel.

370       Appellate Courts of Illinois.

Butters v. Chicago, Burlington & Quincy Ry. Co., 157 Ill. App. 369.

N. F. Anderson, Thomas J. Welch and James H. Andrews, for defendant in error.

Mr. Justice Dibell delivered the opinion of the court.

Main street in the city of Kewanee runs north and south. The main line of the Chicago, Burlington & Quincy Railway Company crosses it nearly at right angles, but inclining slightly to the south as it goes west and slightly to the north as it goes east, and is on a straight line for over half a mile west, where it comes around a curve. The crossing of Main street and the railroad is in a busy part of the city. West of the street and north of the railroad is the factory and foundry of a pump company, some of the smaller buildings of which come to the railroad right of way some distance west of the street. East of Main street and immediately north of the right of way is the plant of the Kewanee Light & Power Company, whose buildings come to the right of way. East of Main street and immediately south of the railroad is the plant of the Western Tube Company, containing extensive works, in which from 500 to 600 employes work at night.

Considerable noise was caused by the electric plant and the tube works. There was an electric light at night nearly over the crossing. The crossing was protected by gates operated from a tower. An ordinance of the city limited the speed of passenger trains to ten miles per hour. Some time between midnight and one o'clock in the morning of April 30, 1902, a carriage drove south on Main street from north of the railroad. A young man and a young woman were seated on the front seat and another young man and young woman were upon the back seat. The young man on the front seat was driving. One of the two young men was Charles A. Butters. It is not now known whether he was on the front seat or the back seat, though as he worked for a livery stable it might perhaps be presumed that he was driving. There were four railroad tracks across the street. The first reached from the north was a switch track; the second was the west bound main track; the third was the

east bound main track; and the fourth a switch track. As this carriage drove across the east bound main track it was struck by an east bound fast mail train. The four persons and the two horses were killed and the carriage was demolished. Butters was a little less than nineteen years old. He left surviving him his father, mother and two unmarried sisters. He was in good health, steadily at work, and turned all his wages over to his parents. His administratrix brought this suit against the railway company to recover damages for his death for the benefit of the next of kin. In different counts of the declaration it was charged that the train was run at a high and dangerous rate of speed; that it was run at a speed in violation of said ordinance; that no statutory signals were given; that the gates were not down as they should have been when the train was coming, and thereby plaintiff's intestate was led to believe the crossing was safe; that the dangerous character of the crossing required that a flagman or watchman be there stationed, and none was so stationed; and that the company was guilty of negligence generally in the manner in which it propelled the train over the crossing. There was a plea of not guilty, a jury trial, a verdict and a judgment for plaintiff for $4,000 and this is a writ of error to review the judgment, sued out after the dismissal of an appeal.

Of the objections to the rulings of the court upon certain evidence, we think it only necessary to say that we regard the rulings as not erroneous and the matter as not important in view of the other testimony. It is argued that the court erred in refusing to direct a verdict for defendant at the close of plaintiff's evidence. Defendant did not stand by that motion, but thereafter introduced testimony, and this was a waiver of the motion. Langan v. Enos Fire Escape Co., 233 Ill. 308. It is argued that the court erred in not directing a verdict for defendant at the close of all the evidence. The trial court was not authorized to grant that motion unless there was no evidence or but a scintilla of evidence tending to prove the material averments of the declaration. Libby, McNeill & Libby v. Cook, 222 Ill. 206.

The negligence of defendant was clearly established. The ordinance was in evidence and the unlawful speed of the train was clearly established. A witness testified that in his judgment the train was running at from 65 to 70 miles per hour when it reached Main street. Other proof showed that the brakes were set and fire flying from them at about that time and that the train ran over half a mile before it stopped. It was about half an hour late. It carried mail only and was not scheduled to stop at Kewanee. This proof was not controverted and it established the charge of negligence in running at a rate of speed prohibited by ordinance, and might well have been held by the jury to establish the charge of running at a highly dangerous rate of speed over an important street of the city. There was evidence that no whistle was blown by this engine, and other evidence that the whistle was blown only at the curve half or three-quarters of a mile distant, and still other evidence that it was blown almost continuously from said curve to Main street. There was an apparent preponderance of evidence in favor of defendant on this subject. There was positive evidence that the bell was ringing and that it was not ringing. Manifestly, the court could not take the case from the jury on any theory of a lack of evidence to establish defendant's negligence.

It was for the jury to say whether plaintiff's intestate was negligent in approaching and driving on the track in front of this train. Plaintiff in error contends that the negligence of Butters is so clearly proven that no reasonable mind could find otherwise and, for that reason, the court should have directed a verdict at the close of all the proofs, and this is the material question in the case. As already shown, the jury may fairly have concluded that there was considerable noise at that crossing by reason of the adjacent plants then in operation. There was an arc light over the crossing, which would have a tendency to prevent persons on the street being as quickly conscious as otherwise of the headlight on the engine. The gates were up. Plaintiff in error contends that this fact should not be considered, in

SECOND DISTRICT—OCTOBER, 1910.        373

Butters v. Chicago, Burlington & Quincy Ry. Co., 157 Ill. App. 369.

the absence of proof that it was customary to operate these gates at that time of night and that Butters knew thereof and relied thereon.   Plaintiff in error induced the court to instruct the jury that "where a railroad company maintains gates at a crossing and the gates are open, it is an invitation to the public to cross and that it is safe for them to do so." This was followed by a qualification but this qualification did not relate to the fact that it was night time nor to the question whether plaintiff in error was accustomed to operate the gates at that time in the night.   With that instruction in the case given at plaintiff in error's request, plaintiff in error can hardly be heard to say that the condition of those gates was not an invitation to these young people to drive across and information to them that it was safe to do so.   A witness for defendant testified that the carriage was driven on a walk as it approached the railroad tracks from the north; that he rode up by the left side of the carriage on a bicycle and recognized the young women and talked with them, but did not know the young men; that he heard the train whistle at the curve and saw the headlight at that point when he and the carriage were on the north switch track. Some witnesses testified that this curve was half a mile west and a witness who had the best means of knowing testified that it was three-quarters of a mile west of Main street.   The man on the bicycle testified that he told the young people in the carriage that the train was coming and they had better wait, and some one of them replied that they had time to get across, and he then went ahead and left them, and heard no crash, and did not know of the accident till next morning. He testified that while he was talking with them, the driver sitting on the right side in front had the lines in his right hand lying in his lap, his face turned towards the east and his left arm over the back of the seat.   This witness admitted that he had since been convicted of grand larceny and served a term of imprisonment in the Reform School therefor.   This was an infamous crime (People v. Russell, 245 Ill. 268; Bartholomew v. People, 104 Ill. 601), and in a civil case the witness may be compelled to testify to such conviction

374     APPELLATE COURTS OF ILLINOIS.

Butters v. Chicago, Burlington & Quincy Ry. Co., 157 Ill. App. 369.

for the purpose of affecting his credibility, as impeaching testimony. Revised Statutes, chap. 51, sec. 1. The jury and the trial judge saw this witness and heard his testimony, and, in view of this impeaching testimony, we cannot know that they could or should have believed him. There were things in his testimony tending to discredit it. For instance, as he rode by the left hand side of this carriage, the faces of the occupants were turned towards him, that is, towards the east, and yet he testified that the headlight of this engine, half or three-quarters of a mile to the west, shone in their faces. But, if we assume that this testimony was all worthy of belief, and that the driver or Butters then saw this train at that distance away, he had a right to presume that defendant would not run its train in violation of the ordinance, and contributory negligence could not be imputed to him for a failure to anticipate that defendant would approach this crossing at a rate of speed prohibited by the ordinance. Dukeman v. C. C. C. & St. L. R. R. Co., 237 Ill. 104. If the engine was half a mile distant when this witness left the party, and it had traveled that half mile in obedience to the ordinance, it would not have reached this street till at least three minutes had passed and these young people would have been far beyond the railroad; but if the engine ran at 70 miles per hour, the time in which it covered the intervening space was less than thirty seconds. Under all this evidence we cannot say that the jury ought to have found that the deceased was not in the exercise of due care as he approached and went upon this crossing.

The second instruction given for plaintiff required of Butters the exercise of due care "at the time he was killed." The tenth instruction contained the same language. It is argued that this was restricting the exercise of due care to the instant when the engine struck him, whereas he was required to exercise due care as he approached and went upon the crossing. There are a few cases where language of this character has been criticized. It has, however, in effect been approved in many of the latest cases. Thus, in Krieger v. A. E. & C. R. R. Co., 242 Ill. 544, it was held that the words

"at the time of the injury," in such an instruction did not limit the requirements to the time when the plaintiff was on the track, but included the whole occurrence. In L. S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641, the plaintiff had been injured and one of the essentials to his recovery, stated in an instruction in his behalf, was "that the plaintiff was exercising due care himself at the time." The court held that the words "at the time," used in the instruction, referred to the whole transaction or series of circumstances, from the time plaintiff reached the tracks to the time when he was injured, leaving it to the jury to determine whether he used due care before he stepped upon the track. This language was quoted with approval in Peterson v. Chicago Consolidated Traction Co., 231 Ill. 324. Like holdings are found in Knox v. American Rolling Mill Co., 236 Ill. 437; Chicago North Shore St. Ry. Co. v. Strathmann, 213 Ill. 252; St. Louis Nat. Stock Yards v. Godfrey, 198 Ill. 288; C. & A. R. R. Co. v. Harrington, 192 Ill. 9; C. C. C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217; L. S. & M. S. Ry. Co. v. Ouska, 151 Ill. 232; McNulta v. Lockridge, 137 Ill. 270. We therefore conclude that the jury would understand that these instructions referred to the whole occurrence and to all the circumstances relating to plaintiff's intestate riding or driving on this crossing and being killed. We cannot suppose that the jury would be so foolish as to think that the court meant that Butters must have exercised due care only at the very instant when the engine struck him and extinguished his life. Plaintiff in error complains of the refusal of instruction No. 4, requested by it, which required that Butters should have been in the exercise of due care at the time and immediately before the accident. That element was embodied in the instructions already mentioned, interpreted in the light of the foregoing decisions. Various given instructions required him to have been in the exercise of ordinary care for his own safety to entitle plaintiff to recover, and that he should have been without negligence on his part contributing to the injury. One instruction, given at the request of plaintiff in error, made it a defense if

the jury believed from the evidence that plaintiff's intestate could have avoided the injury to himself by the exercise of ordinary care on his part, and that he did not exercise such care, and placed the burden of proof on that subject on appellee. Instruction No. 18, as requested by defendant, was modified, but as given it contained language, requested by defendant, telling the jury that if Butters, as he approached the railroad track, did not observe all reasonable precautions to avoid injury, but drove directly on the track without taking any steps to ascertain if a train was approaching, then plaintiff could not recover, unless the servants of defendant were guilty of wilful and wanton negligence. Instruction No. 19, given at defendant's request, submitted the question whether sufficient notice was given Butters to enable him to get out of the way by the exercise of ordinary care. Another instruction, given at defendant's request, told the jury that Butters was just as much in duty bound to exercise ordinary care to look out for the approaching train and to avoid a collision with it as defendant was to look out for the team and carriage and avoid a collision with it. In another instruction, requested by plaintiff in error, the jury were told that if Butters, by the exercise of ordinary care, could have seen and heard the approaching train for a distance of a quarter of a mile before it reached the crossing, and that he did not exercise such care or paid no attention to the train, but went upon the track where the train was approaching and was then struck by the train and killed, there could be no recovery. Other given instructions were drawn on similar lines. When all these instructions are read as a series, we are of opinion that it is impossible that the jury could have been misled by the giving of instructions Nos. 2 and 10 for plaintiff, and the refusal of No. 4, requested by defendant.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*